UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LFG NATIONAL CAPITAL, LLC                  :
                                            :
                    Plaintiff,              :    11-CV-1260
                                            :    (DHN) (DRH)
                                            :
                                            :
                                            :
         v.                                 :
                                            :    Hearing Date:  12/9/11
GARY, WILLIAMS, FINNEY, LEWIS, WATSON &     :    Time:  10:00 a.m.
SPERANDO, P.L., ET AL.                      :    Before:  Judge Hurd in Utica
                                            :
                    Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPPOSITION TO LFG NATIONAL CAPITAL, LLC'S MOTION FOR LEAVE TO

## AMEND ITS COMPLAINT; REQUEST FOR SANCTIONS

## IN THE AMOUNT OF $5,000.00

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................. 1

II.   STATEMENT OF FACTS.................................................................................. 3

    A.    None Of The Parties Are Residents Of, Citizens Of, Or Have
         Principal Places of Business In New York.......................................... 3

    B.    Having Full Knowledge That The Gary Firm Was Going To Be
         Awarded Significant Attorneys' Fees In A Class Action Case In New
         York Federal Court, Plaintiff Affirmatively Chose To File Its
         Complaint In California Without Any Mention Of The Fee Award In
         The New York Case. ........................................................................... 4

         1.    The Gary Firm is co-lead plaintiffs' counsel in the *Simpson*
             Case in New York Federal Court before Judge Hurd.......................... 4

         2.    This Court entered a Stipulation of Settlement and granted a
             fee award in the *Simpson* Case............................................................. 5

         3.    Plaintiff's attempt to interfere with the *Simpson* Case
             settlement and fee award......................................................................... 5

         4.    Plaintiff filed its law suit against the Gary Firm and its two
             principals in Los Angeles Federal Court. ............................................. 6

          5.    GE Capital, a creditor of the Gary Firm, requested that the fee
             award in the *Simpson* Case be put in an escrow account
             pending the conclusion of litigation by creditors of the Gary
             Firm.  GE Capital Files Suit in Yet Another Federal Court............... 6

    C.    Plaintiff Specifically Told This Court That Its Los Angeles Case
         Against Defendants Is Only Tangentially Related To The *Simpson*
         Case In New York. .............................................................................. 8

         1.    Soon after filing its complaint against Defendants, Plaintiff
             filed an *Ex Parte* TRO Application before the California court.......... 8

         2.    Plaintiff and GE Capital informed this Court that the *Simpson*
             Case was only "tangentially related" to their cases against the
             Gary Firm, which should be resolved in the courts where they
             were pending.............................................................................................. 8

3.      This Court put the *Simpson* Case fees in an escrow account to maintain the status quo while the creditors' claims were being litigated ........................................................................................... 10

4.      The Los Angeles Federal Court denied Plaintiff's TRO request. ............................................................................................... 10

D.     Having Lost Its TRO Before The Los Angeles Federal Court, Four Months After Filing Its Complaint, In A Desperate Attempt At Forum Shopping Plaintiff Filed Motions To Transfer Venue To This Court And Amend Its Complaint. ................................................................. 10

E.     The Los Angeles Federal Court Prematurely Granted Plaintiff's Transfer Motion Based On A Clerical Error, But Despite Acknowledging The Error, The California Court Could Not Correct The Error Because It Had Lost Jurisdiction Over The Action. .................. 101

III.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT SHOULD BE DENIED ............................................................................. 12

A.     Plaintiff's Proposed Amendment Is Futile Because There Is No Jurisdiction Over The Proposed Amended Complaint. .................. 12

B.     Plaintiff Brought Its Motion To Amend In Bad Faith .................... 15

C.     Plaintiff's Motion To Amend Substantially Prejudices Defendants. ............ 15

D.     Plaintiff Has Unduly Delayed In Seeking The Amendment. ........................ 16

IV.    REQUEST FOR SANCTIONS FOR FRIVOLOUS MOTION ............................... 16

V.    CONCLUSION ........................................................................................ 17

## TABLE OF AUTHORITIES

PAGE

## CASES

*Acri v. International Asso. of Machinists & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) ........................................................................ 16

*Adorno v. Crowley Towing & Transp. Co.*,
443 F.3d 122 (1st Cir. 2006) ..................................................................... 12, 13

*Gabrielson v. Montgomery Ward & Co.*,
785 F.2d 762 (9th Cir. 1986) ........................................................................ 12

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,
545 U.S. 308 ................................................................................................. 14

*Hunter v. United Van Lines*,
746 F.2d 635 (9th Cir. 1984) ........................................................................ 14

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) ...................................................................................... 13

*Milanese v. Rust-Oleum Corp.*,
244 F.3d 104 (2nd Cir. 2001) ........................................................................ 12

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ........................................................................ 12

*Price v. Pinnacle Brands, Inc.*,
138 F.3d 602 (5th Cir. 1998) ........................................................................ 12

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) ........................................................................ 12

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) ...................................................................................... 14

## STATUTES

28 U.S.C. § 1331 ................................................................................... 13, 15

28 U.S.C. § 1367 ................................................................................... 14, 15

28 U.S.C. § 1391(a) .................................................................................... 6

## **RULES**

Fed.R.Civ.Proc. 12(b)(6) ................................................................................................................ 13

Local Rule 7.1(i) ........................................................................................................................... 16

Defendants GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, P.L., WILLIE GARY, and LORENZO WILLIAMS hereby submit their Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Leave to Amend the Complaint. Defendants respectfully requests sanctions against Plaintiff in the amount of $5,000.00 for the costs of opposing its frivolous motion.

Plaintiff's motion for leave to amend its complaint is without merit and should be rejected.

## I.  __INTRODUCTION__

Defendants are a minority owned law firm and two of its principal trial lawyers. The firm, Gary, Williams, Finney, Lewis, Watson & Sperando, P.L. (the "Gary Firm"), is located in Stuart, Florida. The Gary Firm has a national reputation for taking on civil rights and other cases against major economic forces in the economy. Its business is typically contingent fee work, and that is where Counterdefendant LawFinance Group, Inc. ("LawFinance Group") came into the picture in 2005. Since 2005, LawFinance Group has provided funding to support the costs of the Gary Firm's contingent fee work. Over that time period, the Gary Firm has paid Plaintiff, LFG National Capital, LLC ("Plaintiff" or "LFG National") over $20 million in principal, interest, and fees on the line of credit provided by LawFinance Group. Indeed, the Gary Firm made a major interest payment of almost $400,000 in February of this year.

Over two years ago, Plaintiff declared a default on the $10 million loan at issue in this case. Plaintiff began collection efforts and then decided to sue the law firm and its two principals, Willie Gary and Lorenzo Williams. When Plaintiff filed its complaint, it was well aware that the Gary Firm had been awarded a substantial sum of attorneys' fees and costs in a

case pending in the Northern District of New York. Despite that knowledge, Plaintiff consciously chose the venue for this suit—the United States District Court for the Central District of California located in Los Angeles, California—and consciously chose not to include specific allegations regarding the sum awarded to the Gary Firm in the New York action.

Although only Plaintiff had a choice as to what venue in which to file a law suit, Plaintiff specifically invoked the contractual venue clause in the Loan Agreement to sue Defendants in California—the state of LawFinance Group's headquarters and the state whose law governs the Loan Agreement. Even though Plaintiff chose the venue when it initiated the law suit in California, Plaintiff and its affiliates attacked venue when they filed a motion to transfer venue concurrently with Plaintiff's motion seeking leave to amend the complaint. While Plaintiff's motion to transfer venue to this Court was noticed to be heard on the same day as Plaintiff's motion for leave to amend the complaint, Plaintiff's transfer motion is not before this Court because it was prematurely granted by the California court based on a clerical error.[1]

Nonetheless, to understand why Plaintiff seeks to amend its complaint now—even though it had knowledge of the substance of the proposed amendments prior to filing its original complaint—it must be considered in conjunction with Plaintiff's motion to transfer venue. When reading the two motions together, the reason for Plaintiff's request for leave to amend the complaint and the odd attack on Plaintiff's own choice of venue is patently obvious. Plaintiff brought a desperate request for a TRO before the California court and lost.

---

[1] In an attempt to correct the Central District of California court's clerical error, Defendants have filed a motion to transfer venue requesting that this Court transfer the action back to the California court so that the California court can consider Plaintiff's transfer motion on the merits.

The loss in the California court prompted Plaintiff and its affiliates to want to try their luck in another court—specifically this Court. In an attempt to camouflage Plaintiff's blatant attempt at forum shopping, concurrent with Plaintiff's motion to transfer venue, Plaintiff filed its motion for leave to amend it complaint, in the hopes that allegations about an attorneys' fee award granted to the Gary Firm in the New York action would make it appear as if this Court is an appropriate venue for this case. They are wrong.

For that reason, Plaintiff's request to add sham amendments to the original complaint in the hopes that it would justify LFG's attempt to have this case proceed in an even more inconvenient forum—the Northern District of New York—should be rejected.

## II.  STATEMENT OF FACTS

### A.  None Of The Parties Are Residents Of, Citizens Of, Or Have Principal Places of Business In New York.

Defendants the Gary Firm, Willie Gary and Lorenzo Williams are all residents and citizens of the state of Florida. Defendants do not have any offices in New York, any employees who reside in New York, and do not maintain documents at any location in New York. In all respects relevant to an analysis of the appropriate venue for this action—and whether Plaintiff's proposed amendments relating to venue in its complaint have merit—all Defendants' ties are to the state of Florida, not New York.

Plaintiff and Counterdefendant, LFG National is a Delaware limited liability company with its principal place of business in Nevada. Counterdefendant LawFinance Group is a California corporation with its principal place of business in San Francisco, California. Counterdefendant LFG Servicing, LLC ("LFG Servicing") is a Delaware limited liability company with its principal place of business in California. (LFG National, LawFinance Group,

and LFG Servicing shall be collectively referred to as "LFG").  To Defendants' knowledge, LFG also does not have any offices in New York, any employees who may have information relevant to the action who reside in New York, and do not maintain documents at any location in New York (except possibly at the New York office of their Los Angeles counsel).  To Defendants' knowledge, in all respects relevant to an analysis of the appropriate venue for this action—and whether Plaintiff's proposed amendments relating to venue in its complaint have merit—all LFG's ties are to the states of California, Nevada and perhaps Delaware, not New York.

What is clear is that neither LFG nor Defendants are residents of, citizens of, or have principal places of business in the state of New York.

**B.** **Having Full Knowledge That The Gary Firm Was Going To Be Awarded Significant Attorneys' Fees In A Class Action Case In New York Federal Court, Plaintiff Affirmatively Chose To File Its Complaint In California Without Any Mention Of The Fee Award In The New York Case.**

The Gary Firm represents contingency fee and class action plaintiffs nationally in civil rights and personally injury cases.  That is the major source of the Gary Firm's income.  One of those cases is an employment discrimination class action in the United States District Court, Northern District of New York before the Hon. David Hurd styled *Merton D. Simpson v. New York State Department of Civil Service*, Case No. 1:04-CV-1182 (the "*Simpson* Case").  As partially detailed in the Counterclaim filed in this case, Plaintiff has affirmatively tried to interfere in the resolution of the *Simpson* Case.

**1.** **The Gary Firm is co-lead plaintiffs' counsel in the *Simpson* Case pending in this Court before Judge Hurd.**

Since November 2003, the Gary Firm and the law firm of Sussman & Watkins (the "Sussman Firm") have represented the plaintiffs in the *Simpson* Case.  The Gary Firm, Willie Gary and Lorenzo Williams have never been parties to any litigation before this Court.  Their

appearances before this Court have always been in their role as co-lead counsel for the class action plaintiffs in the *Simpson* Case.

## 2. This Court entered a Stipulation of Settlement and granted a fee award in the *Simpson* Case.

On April 25, 2011, this Court entered an order in the *Simpson* Case requiring that the defendants tender to the Sussman Firm "a check for $3,421,813.93 representing one quarter of the attorneys' fees [$2,812,500], one quarter of the incentive award for class representatives [$192,500], and the costs incurred to date by plaintiffs' counsel [$416,813.93]…." (hereinafter, the "April 25 Order"). *See* April 25 Order, ¶ 9; a true and correct copy of which is attached to the Declaration of Nada I. Shamonki filed in support of this opposition (the "Shamonki Decl.") as Exhibit A. This Court further ordered counsel to the parties to "confer and insure that the same payment method is employed in succeeding years until distribution of the settlement proceeds has been completed in 2014." *Id.*

## 3. Plaintiff's attempt to interfere with the *Simpson* Case settlement and fee award.

On April 26, 2011, Plaintiff sent a letter to the Sussman Firm informing the Sussman Firm that Plaintiff was a creditor of the Gary Firm and that the Gary Firm was allegedly in default of the Loan Agreement in the amount of approximately $10 million. A true and correct copy of Plaintiff's April 26, 2011 letter is attached to the Shamonki Decl. as Exhibit B. The letter demanded that any amounts owed to the Gary Firm in the *Simpson* Case be paid directly to Plaintiff and that the Sussman Firm should not distribute any amounts to the Gary Firm or "any other person from the Litigation" absent the express written consent of Plaintiff. *Id.*

**4.      Plaintiff filed its law suit against the Gary Firm and its two principals in Los Angeles Federal Court.**

On May 26, 2011, one month after it sent its letter to the Sussman Firm, Plaintiff filed its complaint herein against Defendants for their alleged breach of contract and breach of guarantees related to the Loan Agreement the Gary Firm entered into with counterdefendant LawFinance Group on March 19, 2007.[2] *See* Complaint, ¶¶ 8, 19-31. In support of its decision to file the action in the Central District of California, Plaintiff invoked the venue clause in the Loan Agreement, alleging "[v]enue is proper in this District under 28 U.S.C. § 1391(a) insofar as the agreements at issue herein provide that each Defendant agrees that this action may be commenced in this District, waiving any objection to jurisdiction or venue." Complaint, ¶ 7. In its complaint, Plaintiff alleges that it "holds liens over substantially all of Gary, Williams' property and assets, including its cash, general intangibles, rights to attorneys' fees and costs, equipment, and general accounts receivable." Complaint, ¶ 10. Plaintiff further alleges that its alleged liens "were perfected as of June 8, 2005 through the filing of a Florida Uniform Commercial Code Financing Statement (with a subsequent continuation filed on June 8, 2010)". Complaint, ¶ 10. Despite Plaintiff's knowledge about the fee award entered in the *Simpson* Case, Plaintiff's complaint makes no mention of the *Simpson* Case or the fee award entered therein.

**5.      GE Capital, a creditor of the Gary Firm, requested that the fee award in the *Simpson* Case be put in an escrow account pending the conclusion of litigation by creditors of the Gary Firm. GE Capital Files Suit in Yet Another Federal Court.**

One day after Plaintiff filed its complaint against Defendants, on May 27, 2011, the Sussman Firm filed a letter with this Court relating to the fee award in the *Simpson* Case. The Sussman Firm's letter informed this Court that "after entry of the Court's Order, two creditors of

---

[2]   LawFinance Group unilaterally assigned the Loan Agreement to its affiliate Plaintiff LFG National three days later on March 22, 2007. Complaint, ¶ 9.

the Gary firm have advised me… of asserted liens against the attorneys' fees and costs due from the State under the settlement." A true and correct copy of the May 27, 2011 letter is attached to the Shamonki Decl. as Exhibit C. The Sussman Firm further informed this Court that "in light of the pending liens by the two Gary firm creditors, we recognize that, at this time, the State should only release this firm's share, or one-third, of that amount…." *Id*. The two creditors that had informed the Sussman Firm that they allegedly had liens against the Gary Firm are Plaintiff LFG National and General Electric Capital Corporation ("GE Capital"). The Sussman Firm's letter was copied to GE Capital's counsel and Plaintiff LFG National's counsel, who were identified as "Counsel for Gary Firm Lienholders." *Id*.

On June 1, 2011, counsel for GE Capital filed a letter with this Court stating that on May 13, 2011, GE Capital sent the Sussman Firm a U.C.C. § 9-607 letter alleging that GE Capital had a "perfected security interest" in the attorneys' fees due to the Gary Firm from the *Simpson* Case and requested that the Sussman Firm maintain those funds in an escrow account pending resolution of the rights of secured creditors. A true and correct copy of the June 1, 2011 letter is attached to the Shamonki Decl. as Exhibit D. When the Sussman Firm refused GE Capital's request, GE Capital filed an action in the Southern District of New York against the Gary Firm and the Sussman Firm relating to those funds. *Id*.; *see also* Exhibit E attached to the Shamonki Decl., which is a true and correct copy of GE Capital's Amended Complaint filed June 1, 2011 in the Southern District of New York. GE Capital's counsel expressed the belief that the request made to this Court in the Sussman Firm's May 27, 2011 letter sought to "cause [this Court] to exercise jurisdiction about a dispute involving not even a party to the action pending before [this Court], but rather involving a lawyer for a party. Especially in the presence of an alternate, available forum, there is neither the need nor basis to embroil… this Court's

jurisdiction in an action pending in the Southern District of New York which involves a collateral and co-incidental dispute." Shamonki Decl., Ex. D. GE Capital's letter was carbon copied to Scott Balber, Plaintiff LFG National's counsel, who was identified as "Counsel for Alleged Gary Firm Lienholder." *Id.*

As alleged in GE Capital's Amended Complaint, the Southern District of New York has federal diversity jurisdiction over GE Capital's action and venue in that New York court is proper pursuant to a venue clause in the parties' contracts. Exhibit E, ¶ 6.

    **C.**    **Plaintiff Specifically Told This Court That Its Los Angeles Case Against Defendants Is Only Tangentially Related To The *Simpson* Case In New York.**

        **1.**    **Soon after filing its complaint against Defendants, Plaintiff filed an *Ex Parte* TRO Application before the California court.**

On June 3, 2011, Plaintiff filed an *Ex Parte* Application for a Temporary Restraining Order and/or Order to Show Cause re: Issuance of a Preliminary Injunction ("TRO") in the California Court demanding that (a) the Firm be enjoined and restrained from making any transfer of assets of the Firm in excess of $25,000 without Plaintiff's written consent; (b) the Firm be enjoined and restrained from denying Plaintiff's employees and agents access to its premises and financial records; and (c) Willie Gary and Lorenzo Williams, the two principal partners of the Firm, be enjoined and restrained from holding any funds received from the Firm.

        **2.**    **Plaintiff and GE Capital informed this Court that the *Simpson* Case was only "tangentially related" to their cases against the Gary Firm, which should be resolved in the courts where they were pending.**

On June 7, 2011, counsel for Plaintiff sent this Court a letter, which was carbon copied to GE Capital's counsel, Defendants' counsel and the Sussman Firm. A true and correct copy of the June 7, 2011 letter is attached to the Shamonki Decl. as Exhibit F. Plaintiff's letter referenced the Los Angeles litigation pending before the Central District of California court and

informed this Court that Plaintiff allegedly "holds a first lien security interest in substantially all of the assets of the [Gary] Firm, including all fees, costs or other amounts which may become due to the [Gary] Firm with respect to the [*Simpson* Case]." *Id*. Plaintiff further informed this Court that the Gary Firm was allegedly "in default under the Loan Agreement, and all obligations of the [Gary] Firm under the Loan Agreement – totaling in excess of $10.1 million – are presently due and payable." *Id*. Plaintiff enclosed a copy of its complaint before the Central District of California court with its letter. *Id*. Plaintiff also informed this Court that it had filed an application for a temporary restraining order and a preliminary injunction against Defendants. *Id*. Finally, Plaintiff informed this Court that "it is not necessary for [this Court] to amend the Court's April 25, 2011 Order" and that "the disputes between the [Gary] Firm and its creditors are only ***tangentially related*** to the [*Simpson* Case] and should be resolved in the normal course by the courts in which litigation has been filed against the [Gary] Firm." *Id*. (Emphasis added). Finally, Plaintiff added, if this Court was "inclined to modify the April 25, 2011 Order,… the Order be modified to direct the payment to LFG… or in the alternative, that the Order be modified to direct the payment into the registry of the United States District Court for the Central District of California…." *Id*.

On that same day, GE Capital's counsel sent a letter to this Court requesting that the Court modify the April 25 Order "only to direct that any amounts payable to the Sussman Firm which represent amounts due to the Gary Firm shall, in fact, be held in a segregated escrow account by the Sussman Firm pending either: (i) a court order; or (ii) joint written directions instructing release of such funds from the Gary Firm, GE Capital, and LFG." A true and correct copy of the June 7, 2011 letter is attached to the Shamonki Decl. as Exhibit G. GE Capital agreed with Plaintiff's position that the *Simpson* Case was only **TANGENTIALLY RELATED**

to the disputes between the Gary Firm and its creditors. *Id.* However, GE Capital disagreed with Plaintiff's request that the fund be paid either to it or into the registry of the Central District of California court, because it would "necessarily require this Court to make some determination of the respective property interests and litigation positions of non-parties. Instead, this Court should take action only to maintain the status quo, and leave resolution of issues between non-parties to this litigation to other courts where the parties-in-interest are, in fact, also parties to the litigation…." *Id.* In closing, GE Capital added that there was "neither need nor basis to embroil this Court's jurisdiction in actions pending in the Southern District of New York and the Central District of California, both of which involve collateral and co-incidental disputes." *Id.*

3. **This Court put the *Simpson* Case fees in an escrow account to maintain the status quo while the creditors' claims were being litigated.**

On June 9, 2011, this Court modified paragraph 9 of its April 25 Order, and ordered the Sussman Firm to deposit the Gary Firm's share of attorneys' fees and costs in an escrow account pending further order of the court (hereinafter, the "June 9 Order"). A true and correct copy of the June 9 Order is attached to the Shamonki Decl. as Exhibit H.

4. **The Los Angeles Federal Court denied Plaintiff's TRO request.**

Five days later, on June 14, 2011, the Central District of California court denied Plaintiff's TRO.

D. **Having Lost Its TRO Before The Los Angeles Federal Court, Four Months After Filing Its Complaint, In A Desperate Attempt At Forum Shopping Plaintiff Filed Motions To Transfer Venue To This Court And Amend Its Complaint.**

Four months after filing its complaint, on September 30, 2011, Plaintiff filed a motion to transfer venue of this case to this Court. *See* Docket No. 46. Concurrent with Plaintiff's motion to transfer venue, Plaintiff filed its motion to amend its original complaint mainly to add

allegations relating to the *Simpson* Case escrowed funds. The suggested amendments to Plaintiff's complaint appear tailored to have improved Plaintiff's chances of having the action transferred to this Court. Having lost a TRO before the California court, apparently Plaintiff wanted to transfer this case to another judge in hopes of getting better results.

> **E.** **The Los Angeles Federal Court Prematurely Granted Plaintiff's Transfer Motion Based On A Clerical Error, But Despite Acknowledging The Error, The California Court Could Not Correct The Error Because It Had Lost Jurisdiction Over The Action.**

On Friday, October 21, 2011, before the California court could hear Plaintiff's motion to transfer venue on the merits—and before Defendants had an opportunity to file their opposition papers—the California court granted LFG's motion on the mistaken belief that Defendants had failed to timely file their opposition to LFG's transfer motion. A true and correct copy of the Central District of California court's October 21, 2011 Order is attached to the Shamonki Decl. as Exhibit I. On Monday, October 24, 2011, Defendants filed an *ex parte* application requesting that the California court correct its clerical error and transfer the case back to the Central District of California. A true and correct copy of Defendants' *ex parte* application is attached to the Shamonki Decl. as Exhibit J. That same day, Defendants timely filed their oppositions to LFG's transfer motion and Plaintiff's motion seeking leave to amend its complaint. *See* docket nos. 63 and 64 in the Central District of California docket report, a true and correct copy of which is attached to the Shamonki Decl. as Exhibit K; *see also*, a true and correct copy of Defendants' opposition to LFG's transfer motion (without exhibits), attached to the Shamonki Decl. as Exhibit L. While the California court acknowledged its clerical error, on October 26, 2011, it denied Defendants' *ex parte* application because it did not have jurisdiction to correct the error. A true and correct copy of the California court's October 26, 2011 Order is attached to the Shamonki Decl. as Exhibit M. Defendants have filed a motion before this

Court—which will be heard on the same day as Plaintiff's motion to amend—requesting that this Court transfer the case back to the California court so that the California court can consider Plaintiff's transfer motion on the merits. *See* Docket No. 67.

## III. <u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT SHOULD BE DENIED</u>

Leave to amend may be denied if there is undue delay, bad faith or a dilatory motive, the amendment is futile, or there is prejudice to the opposing party. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Here, leave to amend the complaint should be denied because Plaintiff's proposed amendment is a sham amendment designed merely to facilitate LFG's argument in its motion to transfer this case to an inconvenient forum—the Northern District of New York. Moreover, it is a futile proposed amendment because this Court would have no subject matter jurisdiction over the proposed amended complaint. Additionally, Defendants would be prejudiced if the motion to amend was granted. Finally, Plaintiff unduly delayed in bringing its motion. For those reason, Plaintiff's motion for leave to amend its complaint should be denied.

### A. Plaintiff's Proposed Amendment Is Futile Because There Is No Jurisdiction Over The Proposed Amended Complaint.

Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991); *see also*, *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (denying leave to amend because the claim would have been disposed of by summary judgment); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2nd Cir. 2001) (denying leave where proposed claim "could not withstand an inevitable motion for summary judgment"); *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d

122, 126 (1st Cir. 2006) (applying standard governing Fed.R.Civ.Proc. 12(b)(6) motions to dismiss in assessing "futility").

Plaintiff's proposed amended complaint is futile because the proposed amendments make it clear that there would be no subject matter jurisdiction in either this Court or the California court if the Court granted leave to amend. Plaintiff invoked the California court's diversity jurisdiction in order to file the case in the Central District of California. Plaintiff's proposed amendments to the complaint would delete the allegation in paragraph 6 regarding diversity jurisdiction and replace it with an allegation regarding subject matter jurisdiction under 28 U.S.C. § 1331. However, without diversity jurisdiction, neither the California court nor this Court would have jurisdiction over this action.

Plaintiff's proposed amendment claims that the amended complaint is based on federal question jurisdiction under 28 U.S.C. § 1331. *See* Proposed Amended Complaint, ¶ 6. Federal courts are presumptively without jurisdiction over civil actions and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Plaintiff has failed to meet its burden of establishing how any federal court would have subject matter jurisdiction over this case pursuant to Section 1331. Indeed, Plaintiff's motion for leave to amend is void of any real argument or analysis of how this Court's June 9 Order would create subject matter jurisdiction over this breach of contract action.

The critical requirement for general federal question jurisdiction under Section 1331 is whether the action arises under federal law. An action "arises under" federal law within the meaning of Section 1331 if (a) federal law creates the cause of action and/or grants federal jurisdiction to hear the case or (b) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. This exists when a state law claim necessarily raises a

disputed federal issue that is central to the case, provided exercising federal law is consistent with congressional intent about the "sound division of labor between state and federal courts…." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-314.

As discussed in Defendants' Opposition to LFG's motion to transfer venue (*see* Shamonki Decl, Ex. L, sections III.A-D, pp. 11-18), this Court's June 9 Order does not create subject matter jurisdiction—it is simply a placeholder made by the Court at interested parties' request in order to maintain the status quo while the Gary Firm's creditors litigated their claims. There has been no judgment showing that Plaintiff is entitled to the funds escrowed in the *Simpson* Case—there is another creditor, GE Capital, that has a potential security interest and there is no guarantee as to Plaintiff's entitlement to the funds. Thus, there is nothing in the proposed amended complaint to show how a contract dispute between Plaintiff and Defendants raises any federal question. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) (holding that since buyer's underlying claim was contractual in nature and did not "arise under" federal law, the fact that it was asserted by way of a declaratory relief action does not confer federal question jurisdiction). California law governs the parties' Loan Agreement (*see* Docket No. 11-4, Exhibit A to Declaration of Alan L. Zimmerman), so Plaintiff's breach of contract claim is a state law dispute. Deleting the allegations regarding diversity jurisdiction—the only way to create federal subject matter jurisdiction in this case—would destroy jurisdiction in any federal court, including the California court and this Court, so the proposed amendments are futile.

Furthermore, in federal question cases, a valid federal claim must be pleaded before a federal court can exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See Hunter v. United Van Lines*, 746 F.2d 635, 649 (9th Cir. 1984) ("it makes no sense to speak of

[supplemental] jurisdiction until after a court has independently acquired jurisdiction over a federal cause of action"). Since Plaintiff cannot establish a valid federal claim under Section 1331, it also cannot establish supplemental jurisdiction under Section 1367. For that reason alone, Plaintiff's motion for leave to amend should be denied.

Finally, Plaintiff's proposed amendment is also futile because Plaintiff should not be allowed to amend its complaint every time the Gary Firm is awarded a significant fee award that Plaintiff believes it deserves. Plaintiff has already alleged a breach under the parties' agreement—that happened as early as 2009. If Plaintiff were allowed to amend its complaint every time the Gary Firm received a fee award, the action would never end.

### B. Plaintiff Brought Its Motion To Amend In Bad Faith.

Plaintiff's motion to amend is a "sham" amendment. Plaintiff filed its motion to amend in a vain attempt to bolster its motion to transfer venue. Plaintiff's original complaint alleges claims for breach of contract and breach of guaranties. If Plaintiff obtains a judgment in its favor as to those claims then, and only then, would it potentially be entitled to the escrowed funds in the *Simpson* Case and awards in any of the Gary Firm's other settled cases. Accordingly, there is no need for Plaintiff's proposed amendments, which were proffered by Plaintiff in a vain attempt to justify transfer of the case to this Court.

### C. Plaintiff's Motion To Amend Substantially Prejudices Defendants.

The costs of this litigation will be substantially increased if the dispute between the parties is expanded to include every instance in which Plaintiff cannot find or execute on every piece of litigation that the Gary Firm has settled. Plaintiff seems to think it can drag every piece of collateral into this case. That is wrong. Granting Plaintiff leave to amend will only set a precedent that Plaintiff can seek to amend its complaint every time the Gary Firm is granted a

new attorneys' fees award. Not only would such a result be absurd, but it would also be substantially prejudicial to Defendants, who must continue to defend against the moving target that is Plaintiff's pleadings.

        **D.**     **Plaintiff Has Unduly Delayed In Seeking The Amendment.**

Plaintiff argues that there was no undue delay in bringing its motion to amend. MA, 6:18-19. However, the settlement in the *Simpson* Case was finalized well in advance of Plaintiff filing its complaint against Defendants. Accordingly, leave to amend should be denied because Plaintiff knew about the facts on which its proposed amendment is based but chose not to include them in the original complaint when drafting the original complaint. *See Acri v. International Asso. of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action"). In this case, Plaintiff should be limited to the allegations made in the original complaint, and not be allowed leave to add allegations that Plaintiff was aware of at least a month before the complaint was filed.

## IV.     REQUEST FOR SANCTIONS FOR FRIVOLOUS MOTION

Plaintiff's motion for leave to amend the complaint is frivolous and harassing, because Plaintiff's real motivation in filing the motion was to bolster its motion to transfer venue (also a frivolous motion). Pursuant to Local Rule 7.1(i), Defendants should be awarded sanctions against Plaintiff in the amount of $5,000.00 for having to oppose this frivolous motion.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion to amend the complaint be denied and Defendants be awarded sanctions in the amount of $5,000.00 for having to oppose Plaintiff's frivolous motion.

Dated:  November 16, 2011                     Respectfully submitted,

_____
MICHAEL H. SUSSMAN, ESQ.
Sussman & Watkins
P.O. Box 1005
55 Main Street, Suite 6
Goshen, NY 10924
Tel:  (845) 294-3991
Fax:  (845) 294-1623
Email:  sussman1@frontiernet.net
NYND Bar Roll Number:  103324

*Local Counsel for Defendant and Counterclaimant
GARY, WILLIAMS, FINNEY, LEWIS, WATSON &
SPERANDO, P.L., and Defendants WILLIE GARY
and LORENZO WILLIAMS*

TO:    Attorneys for Plaintiff and
       Counterdefendants (Via CM/ECF)

5686352v.2