UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LFG NATIONAL CAPITAL, LLC,

                       Plaintiff,

          -against-

GARY, WILLIAMS, FINNEY, LEWIS AND
SPERANDO, P.L., WILLIE GARY AND LORENZO
WILLIAMS,

                       Defendants.

1:11-CV-1260(DNH)(DRH)

---

GARY, WILLIAMS, FINNEY, LEWIS AND
SPERANDO, P.L.,

                       Counterclaimant,

          -against-

LFG NATIONAL CAPITAL, LLC, LAWFINANCE
GROUP, INC., AND LFG SERVICING, LLC,

                       Counterdefendants.

---

## LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., AND LFG SERVICING, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE

CHADBOURNE & PARKE LLP
Attorneys for Plaintiff and
Counterdefendants
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT .............................................................................................................................5

    A.    STANDARD FOR TRANSFER..................................................................................5

    B.    THIS COURT IS IN THE BEST POSITION TO DETERMINE THE MERITS OF THE MOTION ..................................................................................6

    C.    THE NORTHERN DISTRICT OF NEW YORK IS THE APPROPRIATE VENUE FOR THIS ACTION ...........................................................7

        1.    THE ACTION COULD HAVE ORIGINALLY BEEN BROUGHT IN THE NORTHERN DISTRICT OF NEW YORK .............7

            a.    Defendants Have Admitted that This Court is the Appropriate Forum for the Dispute ...................................................7

            b.    The Northern District of New York Has Subject Matter Jurisdiction Over the Dispute........................................................10

            c.    The Northern District of New York Has Personal Jurisdiction Over the Defendants ....................................................................12

        2.    THE JUNE 9, 2011 ORDER OF THIS COURT WAS A CHANGE IN CIRCUMSTANCE SUFFICIENT TO WARRANT A CHANGE IN VENUE .......................................................................13

        3.    THE RELEVANT FACTORS MILITATE STRONGLY AGAINST TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA ........................................................................................15

            a.    The Simpson Escrow Fund, As Collateral Under the Loan Agreement, is Property That is the Subject of This Action ...........15

            b.    Judicial Economy Favors Venue in this District............................15

            c.    New York is a More Convenient Forum for All Parties................16

CONCLUSION..........................................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

3H Enters., Inc. v. Dwyre,
    182 F. Supp. 2d 249 (N.D.N.Y. 2001).................................................................12

Addington v. Agent Orange Veterans Payment Program,
    131 F.3d 130, 1997 WL 738070 (2nd Cir. 1997) ................................................11

Anglo Am. Ins. Group, P.L.C. v. CalFed, Inc.,
    916 F. Supp. 1324 (S.D.N.Y. 1996) ....................................................................14

Bates v. Long Island R.R. Co.,
    997 F.2d 1028 (2d Cir. 1993)................................................................................9

Boeing Co. v. Van Gemert,
    444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).....................................10, 11

Chesley v. Union Carbide Corp.,
    927 F.2d 60 (2d Cir. 1991)..............................................................................11, 13

Columbia Pictures Indus., Inc. v. Fung,
    447 F. Supp. 2d 306 (S.D.N.Y. 2006)..................................................................14

Clark By and Through Clark v. Group Plan for Emps. of North Tonawanda Public Sch.,
    845 F. Supp. 117 (W.D.N.Y. 1994)......................................................................10

Corke v. Sameiet M.S. Song of Norway,
    572 F.2d 77 (2d. Cir. 1978)...................................................................................14

Corporacion Venezolana de Fomento v. Vintero Sales Corp.,
    477 F. Supp. 615 (S.D.N.Y. 1979) ......................................................................10

D.H. Blair & Co., Inc. v. Gottdiener,
    462 F.3d 95 (2d Cir. 2006)..............................................................................5, 16

Eagle Auto Mall Corp. v. Chrysler Group, LLC,
    760 F. Supp. 2d 421 (S.D.N.Y. 2011).............................................................5, 16, 17

Egri v. Connecticut Yankee Atomic Power Co.,
    270 F. Supp. 2d 285 (D. Conn. 2002)..................................................................11

Eyak Native Village v. Exxon Corp.,
    25 F.3d 773 (9th Cir. 1994) .................................................................................11

Howard v. Judge Law Firm,
    Civ. No. 09-1644, 2010 WL 2985686 (D. Minn. July 26, 2010) ...........................................18

Grimes v. Chrysler Motors Corp.,
    565 F.2d 841 (2d Cir. 1977 ...................................................................................................12

In re Johns-Manville Corp.,
    600 F.3d 135 (2d Cir. 2010)...................................................................................................13

Joye v. Heuer,
    66 F.3d 316, 1995 WL 552028 (4th Cir. 1995) (Table) ........................................................13

M.L. Private Finance LLC v. Minor,
    No. 08 Civ. 11187, 2011 WL 1900613 (S.D.N.Y. May 19, 2011)........................................12

O'Brien & Gere Eng'rs, Inc. v. Innis Arden Golf Club,
    No. 5:10-CV-410, 2010 WL 3526207 (N.D.N.Y. Sept. 3, 2010).......................................5, 17

Posven, C.A. v. Liberty Mut. Ins. Co.,
    303 F. Supp. 2d 391 (S.D.N.Y. 2004).....................................................................................14

Poupore v. Astrue,
    566 F.3d 303 (2d Cir. 2009)......................................................................................................9

Rabiea v. First Nat. Bank of Pennsylvania,
    No. CV 08-0003, 2008 WL 2562004 (E.D.N.Y. June 26, 2008) ......................................2, 15

Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,
    689 F.2d 982 (11th Cir. 1982) ..................................................................................................6

Sluys v. Hand,
    831 F. Supp 321 (S.D.N.Y. 1993) ..........................................................................................12

Stone v. Patchett,
    No. 08 CV 5171, 2009 WL 1108596 (S.D.N.Y. April 23, 2009)...........................................12

Stroud Prods. & Enters., Inc. v. Castle Rock Entm't, Inc.,
    No. 07 Civ. 8638, 2009 WL 2391676 (S.D.N.Y. Aug. 4, 2009) ...........................................14

Trinity Indus., Inc. v. Myers & Assocs., Ltd.,
    41 F.3d 229 (5th Cir. 1995) ....................................................................................................13

Van Valkenberg ex rel. B.G. v. Astrue,
    No. 1:08-CV-0959, 2010 WL 2400455 (N.D.N.Y. May 27, 2010) .........................................9

**STATUTES**

28 U.S.C. § 1367...................................................................................................................11

iv

28 U.S.C. § 1404(a) ................................................................................................... passim

C.P.L.R. § 302(a)(1) ...................................................................................................... 12

C.P.L.R. § 302(a)(3) ...................................................................................................... 12

Florida Uniform Commercial Code ............................................................................... 8

Uniform Commercial Code ............................................................................................ 8

**OTHER AUTHORITIES**

51 Am. Jur. 2d Liens § 13 ............................................................................................ 15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LFG NATIONAL CAPITAL, LLC,

                    Plaintiff,

        -against-

GARY, WILLIAMS, FINNEY, LEWIS AND
SPERANDO, P.L., WILLIE GARY AND LORENZO
WILLIAMS,

                    Defendants.

1:11-CV-1260(DNH)(DRH)

---

GARY, WILLIAMS, FINNEY, LEWIS AND
SPERANDO, P.L.,

                    Counterclaimant,

        -against-

LFG NATIONAL CAPITAL, LLC, LAWFINANCE
GROUP, INC., AND LFG SERVICING, LLC,

                    Counterdefendants.

---

## LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., AND LFG SERVICING, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE

       Plaintiff and Counterdefendant LFG National Capital, LLC and Counterdefendants

LawFinance Group, Inc. and LFG Servicing, LLC respectfully submit this Memorandum of Law

in Opposition to Defendants' Motion to Transfer Case.

## PRELIMINARY STATEMENT

       Defendants' motion to transfer this action to the Central District of California – without

any showing that California represents a more appropriate forum for this lawsuit – seeks to

prolong and complicate the determination of appropriate venue for no legitimate reason.  The Motion should be denied, for at least three reasons.

*First*, regardless of the merits of Judge Gutierrez' reasoning in transferring this action to this Court, that reasoning is not appropriately reviewed here, and this Court is in the best position to evaluate the merits of venue, which revolve around the nexus between Plaintiffs' claim and this Court's <u>Simpson</u> escrow order.  As the court that rendered the order whose implementation and application is implicated by Plaintiffs' claims, this Court represents the best forum in which to adjudicate the merits of venue.  While Defendants are entitled to have the question of appropriate venue decided on the merits, they are not entitled to have those merits decided in another district, especially in light of this Court's unique competence to determine the issues that are at the crux of the venue dispute.

*Second*, the Northern District of New York is the appropriate venue for this action.  This Court has placed Defendants' fee in the <u>Simpson</u> action, representing a substantial portion of the collateral that is the ultimate subject matter of this dispute, in an escrow account under this Court's exclusive control.  The question of entitlement to these funds can only be litigated here, and in order to show entitlement to the <u>Simpson</u> escrow fund, Plaintiff must prove that Defendants owe money to Plaintiff under their Loan Agreement, that they lack valid defenses to that obligation, and that Plaintiff holds a valid lien over the <u>Simpson</u> fee.  Indeed, in a virtually indistinguishable action brought by another creditor of Gary, Williams, Finney, Lewis and Sperando, P.L. (the "Firm") asserting a claim to the <u>Simpson</u> fee, Defendants have taken the position that such claims belong before this Court and only this Court.  In order to protect their interest in the <u>Simpson</u> fee, if this action is not litigated in this District, Plaintiff will be forced to intervene in the <u>Simpson</u> action itself, creating the risk of inconsistent judgments or a "race to

judgment," as well as wasting judicial resources and increasing litigation costs as the identical issues are litigated in parallel in two different federal courts on opposite coasts.  Indeed, each of the relevant venue factors either strongly favors venue in this District or is neutral.

*Finally*, Defendants' proposed course of action – re-transferring this action, already transferred across the country once, back to the Central District of California in order for that court to potentially re-transfer the case yet again to this Court – would result in a bizarre procedure entailing considerable judicial diseconomy and inefficiency, as well as delay and increased costs for the litigants, serving no purpose.  This Court has already scheduled hearings on all of the pending motions in this action.  Those motions have been pending for months, and the ultimate resolution of this action depends on their timely adjudication.  If this action is transferred back and forth across the United States in ping-pong fashion, Plaintiff will be deprived of a timely adjudication of its claims, delaying justice and threatening dissipation of Plaintiff's collateral.  Defendants' purported interest in having a particular venue for the determination of the question of venue is insubstantial in contrast with these consequences.

## STATEMENT OF FACTS

This action was filed on May 26, 2011, and promptly served thereafter.  See D.E. #1.  On June 9, 2011, after Plaintiff and a putative junior secured creditor of the Firm, General Electric Capital Corp. ("GE Capital"), asserted claims to the fees and costs to be paid to the Firm in Simpson, et al. v. New York State Department of Civil Service, et al., No. 1:04-cv-01182-DNH-DRH (N.D.N.Y.) ("Simpson"), this Court entered an Order (the "June 9 Order") directing that the defendants in that case tender to the law firm of Sussman & Watkins (the Firm's local counsel) "a check . . . for the Gary Law Firm's share (two-thirds) of the initial attorneys' fees payment . . . and the balance of the costs owed by the defendants."  See Declaration of Scott S. Balber in Support in LFG National Capital, LLC ("LFG National"), LawFinance Group, Inc. and

3

LFG Servicing, LLC's (collectively, "LFG") Opposition to Defendants' Motion to Transfer Case ("Balber Decl."), Ex. A at ¶ 2.  The June 9 Order further provided that "Sussman & Watkins shall deposit said amount with the Bank of America . . . to be held in a separate escrow account . . . *pending further order of this Court*."  See id. (emphasis added).  According to the terms of the June 9 Order, as well as the original order of settlement approval, entered on April 25, 2011 (the "April 25 Order"), the Firm's legal fee award in the Simpson case – representing two-thirds of a total court-ordered fee payment of up to $11.25 million – amounts to approximately $7 million. See June 9 Order; Balber Decl., Ex. B (the "April 25 Order").

On September 30, 2011, LFG moved to transfer this action from the Central District of California to this Court pursuant to 28 U.S.C. § 1404(a).  See D.E. #46.  On October 21, 2011, the Central District of California granted Plaintiff's motion, transferring the case to this Court. See D.E. #60.  The Central District of California denied a subsequent motion by Defendants to "re-transfer" the action from this Court, holding that only this Court had jurisdiction over the action after it was transferred to this District.  See Balber Decl., Ex. C.

On October 26, 2011, this Court scheduled a Preliminary Conference for March 27, 2012. See D.E. #63.  On November 1, 2011, this Court set a hearing date of December 9, 2011 for the Motion to Dismiss filed by certain Defendants in this action, as well as Plaintiff's Motion to Dismiss Counterclaims and Motion for Leave to Amend the Complaint in this action.  On November 7, 2011, Defendants brought a Motion seeking transfer of this action back to the Central District of California, purportedly "without prejudice" to yet another transfer back to this Court.  See D.E. #67.  Defendants' motion is not, on its face, made pursuant to any statute, rule of procedure, or other provision of law.  Id.

## ARGUMENT

### A.   STANDARD FOR TRANSFER

Contrary to Defendants' contention, a party may not properly move to transfer venue without a "current intention to argue the merits of the transfer motion."  See Sussman Decl. in Support of Defendants' Motion to Transfer Case at ¶ 5.  Rather, in order to meet their burden pursuant to 28 U.S.C. § 1404(a), Defendants must put forth the merits of why transfer is appropriate, showing that transfer is warranted "for the convenience of the parties and witnesses, in the interest of justice."  See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  The party seeking transfer bears the burden of demonstrating that transfer is warranted. See O'Brien & Gere Eng'rs, Inc. v. Innis Arden Golf Club, No. 5:10-CV-410, 2010 WL 3526207, *6 (N.D.N.Y. Sept. 3, 2010)[1]; Eagle Auto Mall Corp. v. Chrysler Group, LLC, 760 F. Supp. 2d 421, 424 (S.D.N.Y. 2011).

In determining whether a motion to transfer venue is proper pursuant to 28 U.S.C. § 1404(a), courts consider "(1) convenience of witnesses; (2) convenience of parties; (3) locus of operative facts; (4) availability of process to compel the attendance of unwilling witnesses; (5) location of relevant documents and other sources of proof; (6) relative means of the parties; (7) relative familiarity of the forum with the governing law; (8) weight accorded to the plaintiff's choice of forum, and (9) the interests of justice."  See Eagle, 760 F. Supp. 2d at 425 (citing Gottdiener, 462 F.3d at 106-07).  A motion to transfer a previously-transferred case does not bring up, for review in the transferee court, the reasoning of the transferor court's transfer

---

[1]   The Court is respectfully referred to the Compendium of Unreported Cases, attached as Exhibit 1.

decision; instead, this Court must independently evaluate the merits of the transfer motion. Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 989 (11th Cir. 1982) ("[A] district court cannot perform an appellate function by directly reviewing the decisions of another district court, but there is nothing to prevent [the transferee district court] from independently considering a motion to retransfer.").

Defendants make no arguments before this Court concerning the merits of venue, despite this being the proper opportunity to do so – a failure that should, in itself, doom their transfer motion. And Plaintiff respectfully submits that an examination of the merits demonstrates that a re-transfer of this action to the Central District of California "without prejudice" to a re-re-transfer to this Court would be a pointless exercise, serving no purpose other than to delay the adjudication of this action, waste judicial resources, and raise the cost of litigation for all parties to this action. Instead, in light of the compelling factors favoring the adjudication of this dispute in this District, this Court should retain this action on the grounds that venue belongs in this District on the merits.

**B.      THIS COURT IS IN THE BEST POSITION TO DETERMINE THE MERITS OF VENUE IN THIS DISTRICT**

This Court, and not the Central District of California, is best positioned to assess the merits of venue in this District. The dispositive venue issues in this case revolve around the relationship between this action and this Court's own June 9 Order. As the court that rendered that Order, this Court is best able to determine the extent to which Plaintiff's claims – and Defendants' counterclaims, which are expressly predicated on actions taken in the Simpson case, see D.E. #36, ¶¶ 9, 25, 27-29, 33-34, 39-42, 63-64,  implicate the interpretation and enforcement of the June 9 Order. The distinctive factor that makes the venue questions in this action different from the ordinary application of standard venue principles – principles that are well-established

and as readily applied by this Court as any other – is this action's relationship to a settlement fund established by order of this Court, and escrowed pending this Court's determination of entitlement to the escrowed funds.

## C.   THE NORTHERN DISTRICT OF NEW YORK IS THE APPROPRIATE VENUE FOR THIS ACTION

### 1.   THE ACTION COULD HAVE ORIGINALLY BEEN BROUGHT IN THE NORTHERN DISTRICT OF NEW YORK

#### a.   Defendants Have Admitted that This Court is the Appropriate Forum for the Dispute

The Firm's attempt to transfer venue elsewhere is impossible to reconcile with the position the Firm has taken in a similar litigation brought by another party asserting liens over the Firm's assets, including the Simpson fee.  In that litigation, General Electric Capital Corp. v. Willie E. Gary, et al., No. 11-CV-03671(VM) (S.D.N.Y) (the "GE Litigation"), Defendants Willie Gary ("Gary") and the Firm were sued by plaintiff GE Capital for allegedly breaching a contract to pay GE Capital funds pursuant to a loan agreement.  See Balber Decl., Ex. D at ¶ 38-49 (the "GE Amended Complaint").  The facts of the GE Litigation mirror those of the instant action – the Defendants borrowed funds pursuant to a loan agreement, GE Capital purports to have perfected a security interest in attorneys' fees paid to the Firm pursuant to the loan agreement, and the Defendants, now allegedly in default of the loan agreement, have refused to honor GE Capital's security interest in attorneys' fees.  Compare GE Amended Complaint ¶¶ 40-42 ("GE Capital has performed each and every of its obligations under the Agreements . . . GE Capital has a specific, perfected security interest in the [Simpson escrow fund], such obligation having been created pursuant to the Agreements . . . [Defendants] anticipatorily breached the Agreements . . . .") with D.E. # 55-1 at ¶ 39-40 ("Plaintiff's Proposed Amended Complaint") ("Plaintiff holds a valid lien over substantially all assets of Gary, Williams, including all fees and

costs to be paid to Gary, Williams in the <u>Simpson</u> case . . . Gary, Williams has breached the Loan Agreement and the entire balance thereunder is past due . . . .").

Both GE Capital and LFG National claim to have a perfected security interest in the settlement monies owed to the Firm in the <u>Simpson</u> action.  As stated by GE Capital in the GE Amended Complaint ¶ 12, "GE Capital perfected its security interest in the [<u>Simpson</u> escrow account] by filing a UCC financing statement."  And as stated by LFG National in Plaintiff's Proposed Amended Complaint ¶ 15, "LFG National's liens [including the attorneys' fees and costs in the <u>Simpson</u> case] were perfected as of June 8, 2005 through the filing of a Florida Uniform Commercial Code Financing Statement."  Moreover, the <u>Simpson</u> escrow fund lies at the center of both disputes: according to the GE Amended Complaint ¶ 35, "this dispute concerns rights and obligations under unambiguous agreements, and GE Capital's right to payment [of the <u>Simpson</u> escrow funds] pursuant to the NY Lawsuit Payment Obligation is unassailable." Plaintiff's Proposed Amended Complaint ¶ 40 similarly states that "[b]ecause Gary, Williams has breached the Loan Agreement and the entire balance thereunder is past due, Plaintiff is entitled to receive all funds currently held in escrow pursuant to the [June 9 <u>Simpson</u> Order], and all legal fees and costs payable to Gary, Williams pursuant to the [April 25 <u>Simpson</u> Order], as modified by the [June 9 <u>Simpson</u> Order]."

Despite these obvious and patent similarities, the Firm has taken two contradictory positions with regards to where venue is proper for each action.  In its Answer in the GE Litigation, Gary and the Firm – represented by the same counsel that has appeared for them here – states that the United States District Court for the Southern District of New York "lacks jurisdiction over this matter as [the Northern District of New York] has exercised jurisdiction over the <u>res</u> and directed Sussman as to its proper disposition and this Court should decline to

exercise jurisdiction over the same res." See Balber Decl., Ex. E at 5 (the "GE Litigation

Answer").  Despite stating that only the Northern District of New York has jurisdiction over the

GE Litigation because this Court has jurisdiction over the Simpson settlement fund, Defendants

now seek to transfer venue to the Central District of California, and in documents (improperly)

filed before that Court after the action was transferred, they have suggested that this Court *lacks*

jurisdiction over a claim to the Simpson fee.  See Memorandum in Opposition to Motion to

Transfer Case to Northern District of New York at 11-13, LFG National Capital, LLC v. Gary

Williams, Finney, Lewis, Watson and Sperando, P.L. et al., No. CV11-04538 PSG (PJWx) (C.D.

Cal. Oct. 24, 2011) (No. 63) ("Defendants' Opposition to Motion to Transfer Venue") ("At the

time Plaintiff filed the complaint—and now—the Northern District of New York did not (and

does not) have subject matter jurisdiction . . . and venue was not (and is not) proper.").[2]  Any

suggestion by Defendants that this is not the proper venue for this dispute, and that this Court

lacks jurisdiction to hear this dispute would not only be meritless as a matter of law, but patently

made in bad faith when viewed in the context of the signed pleadings made by these same

Defendants in the GE Litigation.  Accordingly, Defendants should be estopped from making any

such argument.  See e.g. Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993)

---

[2]   Defendants' Opposition to Motion to Transfer Venue was filed in the United States District
Court for the Central District of California, but was not filed here.  Because it was filed in a
court other than the one before which this case was then pending, the filing – which
Defendants still have not provided to this Court – is a nullity, and Defendants have not
properly presented arguments concerning the merits of venue in their opening brief, waiving
any such arguments.  See Van Valkenberg ex rel. B.G. v. Astrue, No. 1:08-CV-0959, 2010
WL 2400455, *18-19 (N.D.N.Y. May 27, 2010) (holding that an argument was waived
where the party raised it in a reply brief but failed to argue it in its opening brief) (citing
Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)).

(finding judicial estoppel appropriate to prevent "offending party [from] engag[ing] in fast and loose behavior which undermined the integrity of the court").

Likewise, any argument that the <u>Simpson</u> settlement fund is not property (<u>see</u> Defendants' Opposition to Motion to Transfer Venue at 14-15), would be similarly irreconcilable with Defendants' submissions in the GE Litigation: as stated by Gary and the Firm in its GE Litigation Answer, the <u>Simpson</u> settlement fund is a "res" which this Court has jurisdiction over. <u>See</u> GE Litigation Answer at 5.

**b.    The Northern District of New York Has Subject Matter Jurisdiction Over the Dispute**

On the merits, this Court plainly has subject matter jurisdiction over this dispute, because the dispute implicates the question of entitlement to a settlement escrow fund established pursuant to this Court's April 25 Order and June 9 Order.[3]  <u>See</u> <u>Boeing Co.</u> v. <u>Van Gemert</u>, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).  It is well settled that courts have subject matter jurisdiction over a claim to a fund established by that court.  <u>See</u> <u>id</u>.  Indeed, the interpretation and application of this Court's orders constitutes a federal question for purposes of

_____

[3]    Plaintiff's Proposed Amended Complaint, D.E. # 55-1 clearly implicates these questions, and the original Complaint – because it asserts liability under the Loan Agreement and a valid lien over all of the Firm's fees and costs (including the <u>Simpson</u> fee) also asserts the essential elements of a claim to the <u>Simpson</u> fee.  The basis for subject matter jurisdiction may appropriately be clarified by amendment of the Complaint.  <u>See</u> <u>Clark By and Through Clark</u> v. <u>Group Plan for Emps. of North Tonawanda Public Schs.</u>, 845 F. Supp. 117, 120 (W.D.N.Y. 1994) (holding that if jurisdiction was lacking as pled in original complaint, the court would grant leave to amend the complaint to change the jurisdictional basis); <u>Corporacion Venezolana de Fomento</u> v. <u>Vintero Sales Corp.</u>, 477 F. Supp. 615, 618-19 (S.D.N.Y. 1979) (holding that courts "allow[] amendments that change the entire theory of subject matter jurisdiction upon which the parties rely," and that "leave to amend the pleadings to allege different bases of subject matter jurisdiction will be granted if it is shown that jurisdiction exists under any other theory of subject matter jurisdiction").

10

subject matter jurisdiction.  See Egri v. Connecticut Yankee Atomic Power Co., 270 F. Supp. 2d 285, 289 (D. Conn. 2002) (holding that "jurisdiction would lie in this Court based on the claims alleged in the complaint. Those claims arise under federal law because each requires interpretation of and/or launches a challenge against the Agreement contained in the Order, which constitutes a 'law of the United States' for purposes of 28 U.S.C. § 1331"); see also Boeing, 444 U.S. at 478, 100 S.Ct. at 749 (finding the court had subject matter jurisdiction to determine attorney's fees to be taken from a common fund); Addington v. Agent Orange Veterans Payment Program, 131 F.3d 130, 1997 WL 738070, *1 (2nd Cir. 1997) (exercising jurisdiction over a settlement fund where the agreement stated that the fund was under the Court's jurisdiction: "[u]nder the settlement agreement approved by the district court and affirmed by this Court, the fund was created and the parties agreed that 'the [Settlement] Fund shall be maintained and administered by the [District] Court and shall be under the Court's continuous jurisdiction, control and supervision to assure that ... all disbursements are properly made'"); cf. Eyak Native Village v. Exxon Corp., 25 F.3d 773, 777 (9th Cir. 1994) (holding that an action to obtain relief from a federal judgment presents a federal question).  The interpretation and application of this Court's settlement orders constitutes a federal question for purposes of subject matter jurisdiction.  See Egri, 270 F. Supp. 2d at 289.

Moreover, it is beyond serious dispute that this Court has ancillary jurisdiction – codified by the supplemental jurisdiction statute, 28 U.S.C. § 1367 – to determine the question of entitlement to the Simpson fee and escrow fund, as well as all other questions forming part of the same Article III "case or controversy" as the claim to that fee.  See Chesley v. Union Carbide Corp., 927 F.2d 60, 65 (2d Cir. 1991) (holding that "a federal court's ancillary jurisdiction to resolve fee disputes extends to disputes that arise after the initial litigation is no longer before the

court . . . This rule has been applied in cases where there has been a settlement"). As stated in a

case with similar facts:

> [T]he Court finds that ordering the discharge of the liens is within its ancillary
> jurisdiction. The Court was uniquely positioned to determine that the liens should
> be released because this action put the parties' Loan Agreement and plaintiff's
> right under the Loan Agreement to assert liens on defendants' property squarely
> before the Court. The exercise of ancillary jurisdiction was thus appropriate
> because the 'subsidiary controversy' related to release of the liens had a direct
> relation to property or assets actually or constructively drawn into the court's
> possession or control by the principal suit.

See M.L. Private Finance LLC v. Minor, No. 08 Civ. 11187, 2011 WL 1900613, *4 (S.D.N.Y.

May 19, 2011) (citing Grimes v. Chrysler Motors Corp., 565 F.2d 841, 844 (2d Cir. 1977)).

### c.    The Northern District of New York Has Personal Jurisdiction
### Over the Defendants

Because this dispute revolves around the question of entitlement to a fee earned by

Defendants in this District through their litigation efforts here, it is clear that this dispute "arises

from" Defendants' contacts with this District, such that this Court has personal jurisdiction over

the Defendants. Personal jurisdiction over defendants in a fee dispute is proper in the district

where the fee in question was earned. See, e.g., Stone v. Patchett, No. 08 CV 5171, 2009 WL

1108596, *8-10 (S.D.N.Y. April 23, 2009) (finding that plaintiff made a prima facie showing

that the attorney was subject to personal jurisdiction under New York long-arm statute where

attorney had a fee agreement regarding joint representation of a client with other attorneys, one

of which was the plaintiff who practiced in New York state); 3H Enters., Inc. v. Dwyre, 182 F.

Supp. 2d 249, 257 (N.D.N.Y. 2001) (finding prima facie showing of personal jurisdiction under

C.P.L.R. § 302(a)(3) over Texas attorney "who committed the purposeful act of having process

served in New York"); Sluys v. Hand, 831 F. Supp 321, 324 (S.D.N.Y. 1993) (finding personal

jurisdiction under C.P.L.R. § 302(a)(1) "over an Indiana attorney who sent debt collection letters

to a debtor in New York, when the debt collection practices were the subject of the lawsuit").

See also Trinity Indus., Inc. v. Myers & Assocs., Ltd., 41 F.3d 229, 231 (5th Cir. 1995) (holding

that two attorney defendants were subject to personal jurisdiction where one attorney's contacts

with the forum included appearing pro hac vice in that district court, and the other attorney

completed several patent applications and appeared in that district court's litigation for eight

months); Joye v. Heuer, 66 F.3d 316, 1995 WL 552028, *3 (4th Cir. 1995) (Table) (finding

personal jurisdiction over attorney who represented client that was a resident of the forum state,

and who attended depositions in the forum state).

Finally, to the extent that this dispute involves the Simpson escrow fund, the dispute

involves a claim to what Defendants themselves characterize as a "res" located here, see Answer

to GE Amended Complaint at 5, and in rem jurisdiction in this Court is therefore plainly

established.  See In re Johns-Manville Corp., 600 F.3d 135, 151, 153 n.13 (2d Cir. 2010)

("[D]efining in rem jurisdiction as [a] court's power to adjudicate the rights to a given piece of

property," and stating that when "jurisdiction is in rem in nature . . . it permits a determination of

all claims that anyone, whether named in the action or not, has to the property or thing in

question").  Further, because this Court has in rem jurisdiction over the res, the Simpson escrow

fund, the Central District of California has no such in rem jurisdiction.  See Chesley, 927 F.2d at

66 (holding that "[a] common-law rule of long standing prohibits a court, whether state or

federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction

of another court").

### 2. THE JUNE 9, 2011 ORDER OF THIS COURT WAS A CHANGE IN CIRCUMSTANCE SUFFICIENT TO WARRANT A CHANGE IN VENUE

Any contention by Defendants that there has been no "change in circumstances"

supporting the motion by the Plaintiff to change the venue of this action would lack merit.  While

this action could have been brought initially in this District, the June 9 Order, establishing an

escrow fund under this Court's exclusive jurisdiction into which a large proportion of Plaintiff's collateral was placed -- constituted a change in circumstances sufficient to justify Plaintiff in moving for a transfer of venue under 28 U.S.C. § 1404.  In particular, the feasibility and efficiency of litigating Plaintiff's claims against the Firm in a district other than the place where the escrow fund was established, was substantially diminished by this Court's June 9 Order.

In Stroud Prods. & Enters., Inc. v. Castle Rock Entm't, Inc., 2009 WL 2391676, *3 (S.D.N.Y. Aug. 4, 2009), the court found there was a change in circumstance sufficient to require a change in venue where there was a "shift of the center of gravity of the litigation," and "trial efficiency and the interests of justice weigh heavily in favor of litigating all related causes of action that arise out of the [dispute] in a single forum . . . ."  (citing Columbia Pictures Indus., Inc. v. Fung, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006)).  The June 9 Order plainly "shifted" the "center of gravity" of this litigation, insofar as the largest identifiable portion of the collateral forming the subject matter of the dispute was placed under the exclusive control of this Court.

Moreover, "[w]hile courts in this District have, at times, looked for changed circumstances to justify transferring venue when transfer is requested by the plaintiff who originally chose the forum . . . a showing of changed circumstances is not required if transfer is in the interests of justice."  See Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 407 (S.D.N.Y. 2004); Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80-81 (2d Cir. 1978) (ordering transfer of venue requested by plaintiff because transfer was "in the interest of justice" but making no reference to any requirement that plaintiff show a change in circumstance); Anglo Am. Ins. Group, P.L.C. v. CalFed, Inc., 916 F. Supp. 1324, 1329 (S.D.N.Y. 1996) ("The court also may grant a § 1404(a) motion by a plaintiff if the court believes that it would be in the interests of justice to do so, even if [plaintiff] can show no change in circumstances.").

14

3.       **THE RELEVANT FACTORS MILITATE STRONGLY AGAINST TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA**

a.       **The Simpson Escrow Fund, As Collateral Under the Loan Agreement, is Property That is the Subject of This Action**

Venue is most appropriate in this District because this action concerns the <u>Simpson</u> fee and escrow account, which constitute property located in this District and subject to this Court's exclusive control.  Indeed, Defendants concede that the <u>Simpson</u> fee constitutes property located in this District.  <u>See</u> GE Litigation Answer at 5.  This circumstance strongly favors venue here. <u>See</u> <u>Rabiea</u> v. <u>First Nat. Bank of Pennsylvania</u>, No. CV 08-0603, 2008 WL 2562004, *1 (E.D.N.Y. June 26, 2008) (transferring venue to Pennsylvania pursuant to 28 U.S.C. § 1404(a), and noting that the collateral at issue was located in Pennsylvania).

b.       **Judicial Economy Favors Venue in this District**

Remaining in the Northern District of New York serves both the convenience of the parties and the interests of judicial economy, because the core issues in this action must inevitably be decided by this Court in the course of adjudicating entitlement to the <u>Simpson</u> escrow fund and prospective <u>Simpson</u> fee payments.  It is hornbook law that without a valid debt, there can be no valid lien, and that a secured creditor may not enforce its liens in the absence of a default by the debtor.  <u>See</u>, <u>e</u>.<u>g</u>., 51 Am. Jur. 2d Liens § 13.  Accordingly, in order to prove its entitlement to the <u>Simpson</u> escrow and future <u>Simpson</u> fees, Plaintiff will need to prove the validity of the Firm's debt under the Loan Agreement and the existence of defaults by the Firm that render the loan balance immediately due, such that Plaintiff is entitled to exercise its lien rights with respect to the collateral securing its loan to the Firm.  These questions will inevitably be placed squarely before this Court in the course of resolving the question of entitlement to the <u>Simpson</u> funds, and these very same questions form the core of the issues in

dispute here.  It makes no sense to litigate precisely the same issues in parallel in two federal district courts located on opposite sides of the United States.

      **c.**      **New York is a More Convenient Forum for All Parties**

For the same reasons that the parallel litigation of this dispute in two federal courts threatens a waste of judicial resources, such an outcome would also seriously inconvenience all parties to this action.  It is obvious that litigating an identical dispute in two different federal districts at the same time will increase legal fees and costs for all parties, generate duplicative and overlapping discovery and motion practice, create the potential for scheduling conflicts, and provide fertile ground for gamesmanship regarding timing issues, insofar as the first action to be adjudicated will, through application of the doctrines of <u>res judicata</u> and collateral estoppel, bind the parties in the second action.  Remaining in the Northern District of New York is therefore appropriate.  <u>See Eagle</u>, 760 F. Supp. 2d at 425 (holding that "Section 1404(a) protects those involved in litigation from needless inconvenience and costs").

Moreover, insofar as Defendants are located in Florida, litigating this action in New York -- where Defendants litigated the <u>Simpson</u> case and generated the <u>Simpson</u> fee -- is no less convenient than the adjudication of this action in California.  Indeed, Defendants are already litigating the similar GE Litigation in New York State.  While Plaintiff and Counterdefendants are located in California and Nevada, depositions can readily be scheduled in any location convenient for the parties, and Plaintiff and Counterdefendants believe that the transfer of this action would not inconvenience anyone.

The other factors relevant to transfer, including the Plaintiff's choice of forum, the parties' contacts with the forum, the contacts with the forum relating to the cause of action at issue, the availability of compulsory process to procure the attendance of third-party witnesses, and the ease of access to sources of proof, <u>see</u> <u>Gottdiener</u>, 462 F.3d at 106-07, each favor

remaining in the Northern District of New York or are neutral.  See O'Brien, 2010 WL

3526207, at *6 (holding that "[t]he location of relevant documents and relative ease of access to

sources of proof does not tip the scales in anyone's favor in this age of the electronic

transmission of documents and overnight delivery"); Eagle, 760 F. Supp. 2d at 426 (holding

factor concerning ease of access to sources of proof did not weigh in favor of potential transfer

venue, as "it is difficult for the court to envision a situation where there would not be easy

electronic access to most documents").

 While Plaintiff initially brought this action in the Central District of California,

Plaintiff's initial choice of forum has been overtaken by events, insofar as this Court has placed

the bulk of the collateral at issue in an escrow account under his exclusive control.

 Insofar as Plaintiff made the initial motion to transfer venue to this Court, considerations

relating to Plaintiff's choice of forum favor this Court as the forum for this dispute.  Moreover,

another creditor has commenced an action in the Southern District of New York asserting

entitlement to the same funds.  See generally GE Amended Complaint.  Insofar as the Simpson

escrow fund arises from the Firm's contacts with the Northern District of New York, the factors

relating to forum contacts favor remaining in this Court as well.

 It is unlikely that this action between lender and debtor to collect on a loan agreement

will involve a significant number of third-party witnesses (and any such witnesses, such as the

Firm's opposition counsel and co-counsel in the Simpson action, see D.E. #36, ¶¶ 9, 25, 27-29,

33-34, 39-42, 63-64, are as likely to be located in New York or Florida as California), and thus

the factor looking to access to such witnesses is neutral.  Moreover, because equivalent party

discovery mechanisms will be available regardless of forum, the factor looking to ease of access

to sources of proof is likewise neutral.

Additionally, while the Loan Agreement is governed by California law, this factor does not provide a significant reason to grant Defendants' motion to transfer.  See Howard v. Judge Law Firm, Civ. No. 09-1644, 2010 WL 2985686, at *5 (D. Minn. July 26, 2010) (noting that "in the context of a motion to transfer under § 1404(a), the general view is that courts can just as easily apply the law of another state . . . as their own").  Finally, while the Loan Agreement contains a California choice-of-forum clause, that clause is permissive in nature, providing that venue shall be proper in California "if Lender so elects."  See D.E. #23-1 at § 23.  Accordingly, if Plaintiff wishes for this dispute to be litigated in this Court, the Loan Agreement creates no obstacle to the initial transfer to this forum.

## CONCLUSION

For the reasons stated above, Plaintiff and Counterdefendants respectfully request that Defendants' Motion to Transfer Case be denied.

Dated:   November 22, 2011

Respectfully submitted,

CHADBOURNE & PARKE LLP


By _____s/ Scott S. Balber_____
        Scott S. Balber, Bar Number: 517212
        A Member of the Firm
        Attorneys for Plaintiff and
        Counterdefendants
        30 Rockefeller Plaza
        New York, NY  10112
        Telephone: (212) 408-5100
        Fax: (212) 541-5369

Jonathan C. Cross
Andrea Voelker
Chadbourne & Parke LLP
        Of Counsel

18